UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PEN-TECH ASSOCIATES, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> INCENTOVATION, LLC, d/b/a WILD WEST GAMING, <br><br> Defendant/Counterclaim Plaintiff. | CIVIL ACTION NO. 1:20-CV-4615-JPB |

## ORDER

This matter comes before the Court on Pen-Tech Associates, Inc.'s ("Plaintiff") Motion for Summary Judgment [Doc. 46]. This Court finds as follows:

## FACTUAL AND PROCEDURAL HISTORY

The Court derives the facts of this case from Plaintiff's Statement of Undisputed Material Facts, [Doc. 46-2]; Incentovation, LLC's ("Defendant") Response to Plaintiff's Statement of Allegedly Undisputed Facts, [Doc. 49]; and Defendant's Statement of Additional Material Facts in Support of its Opposition to

Plaintiff's Motion for Summary Judgment,[1] [Doc. 48-2].  The Court also conducted its own review of the record.

The Local Rules of this Court require a respondent to a summary judgment motion to include with its responsive brief "[a] response to the movant's statement of undisputed facts."  N.D. Ga. Civ. R. 56.1(B)(2)(a).  The Local Rules make clear that the Court will deem each of the movant's facts admitted unless the respondent refutes or objects to the fact or shows that the fact is either immaterial or unsupported by the record.  Further, in accordance with the Local Rules, this Court will not consider unsupported facts.  The Court will, however, use its discretion to consider all facts the Court deems material after reviewing the record.  For the purpose of adjudicating the instant Motion, the facts of this case are as follows:

Defendant is a two-member Maryland limited liability corporation that is owned by Ryan Hill and Scott Nash and involved in the instant bingo machine business.  [Doc. 49, p. 1]; [Doc. 43, p. 2].  Plaintiff is a Georgia corporation that develops, designs and licenses gaming software for use in gaming machines in various states, including Maryland.  [Doc. 1, pp. 2, 3].

---

[1] Plaintiff did not respond to Defendant's Statement of Additional Material Facts, explaining in its reply brief that the "additional purported facts are irrelevant to the Motion."  [Doc. 53, p. 1 n.1].  In the absence of a response from Plaintiff, the Court deems Defendant's facts to be admitted.  N.D. Ga. Civ. R. 56.1(B)(3).

In the latter half of 2012, the parties reached an oral understanding (the "Alleged Agreement") that is the subject of this lawsuit.[2] Under the Alleged Agreement, Plaintiff, after deducting certain expenses, paid Defendant a percentage of Plaintiff's net revenues (i.e., royalties paid by Plaintiff's licensees) derived from the operation of gaming machines in Maryland. [Doc. 49, p. 2].

The Alleged Agreement did not include any provisions about the arrangement's duration or its termination. Id. at 11. It also lacked various other terms, including those related to indemnification, governing law, exclusivity, assignment of rights, intellectual property rights, dispute resolution, warranties, representations, insurance provisions and limitations on liability. Id. at 6–7.

Although the parties dispute the nature of the services Defendant provided under the Alleged Agreement, it appears that Defendant connected Plaintiff to prospective customers, made financial contributions to the parties' arrangement and provided an initial contribution of twenty-eight gaming machines. Id. at 10;

---

[2] The record is unclear as to when the parties reached the Alleged Agreement other than at some point in August, September or October of 2012. In August of that year, Dwayne Graham, one of Plaintiff's employees, traveled to Maryland to meet with Defendant about a prospective business arrangement. [Doc. 48-2, p. 2]. Hill testified that the partnership started at this time but that the terms were not "worked out" until a subsequent phone call with Graham that took place in September or October. [Doc. 60, p. 82]. Nash testified that he believed the agreement began in the latter half of 2012 but could not be more specific. [Doc. 57, p. 56].

[Doc. 48-2, p. 2, 7]. Plaintiff, for its part, oversaw day-to-day business operations. [Doc. 48-2, p. 2].

When the Alleged Agreement began, Plaintiff and Defendant split net revenues equally. [Doc. 49, p. 2]. Later, in October 2014, the parties renegotiated their respective shares of the net revenues, agreeing that Plaintiff would receive 57.5% and Defendant 42.5%. [Doc. 48-2, p. 10]. This increase served to compensate Plaintiff for its role in managing the day-to-day aspects of the gaming business. Id. Meanwhile, from 2013 to 2020, Plaintiff prepared quarterly reconciliation sheets that showed the income and expenses related to the Alleged Agreement. Id. at 5.

In October 2020, Plaintiff informed Defendant that it was ending the parties' relationship and would no longer pay Defendant any portion of the net revenues. [Doc. 43, p. 9]. Defendant responded that Plaintiff could not "unilaterally" terminate the partnership purportedly formed by the Alleged Agreement. Id. Plaintiff then commenced this action on November 11, 2020, seeking a declaratory judgment that no partnership at will exists between Plaintiff and Defendant. [Doc. 1]. Defendant filed an Answer and Counterclaim on December 11, 2020. [Doc. 8]. On October 19, 2021, with leave of the Court, Defendant filed an Amended Counterclaim, with counts for (1) declaratory judgment, (2) breach of contract, (3)

unjust enrichment and (4) breach of fiduciary duties. [Doc. 43]. On November 12, 2021, Plaintiff filed a Motion for Summary Judgment as to each of Defendant's counterclaims.[3] [Doc. 46].

## ANALYSIS

**A.    Legal Standard**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Allen, 121 F.3d at 646 (quoting Anderson, 477 U.S. at 251).

---

[3] Granting summary judgment on Defendant's declaratory judgment counterclaim would also resolve Plaintiff's sole claim for declaratory judgment.

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." Id.  After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating that summary judgment is improper because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 251). If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

Below, the Court considers which body of law applies to this case before turning to the question of whether the parties reached an enforceable agreement.

**B.    Applicable Law**

A federal court sitting in diversity jurisdiction applies state substantive law and federal procedural law.  Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357

(11th Cir. 2014).  "In diversity cases, the choice-of-law rules of the forum state determine what law governs" a given claim.  Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., 704 F.3d 927, 932 (11th Cir. 2013).  In Georgia,

> [u]nder the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply.

Calhoun v. Cullum's Lumber Mill, Inc., 545 S.E.2d 41, 44 (Ga. Ct. App. 2001) (quoting Lloyd v. Prudential Sec., 438 S.E.2d 703, 704 (Ga. Ct. App. 1993)).

Plaintiff relies on Georgia law in the Motion for Summary Judgment.  In response, Defendant argues that Maryland law applies to any contractual claim because the contract was formed in Maryland in August 2012.  [Doc. 48, p. 2 n.2].  Plaintiff counters that the Alleged Agreement was formed during the September or October phone call between Graham and Hill, although Plaintiff does not specify where this phone call took place.  [Doc. 53, p. 3 n.2].

Even assuming that the circumstances of the phone call mean that the agreement was somehow formed in Georgia rather than in Maryland, the Court believes that this is a case "'where the contract is made in one state and is to be performed in another state.'"  Calhoun, 545 S.E.2d at 44 (quoting Lloyd, 438 S.E.2d at 704).  Although Plaintiff claims that the agreement was performed in

7

both Maryland and Georgia, Plaintiff has not explained what, if any, performance occurred in Georgia. In the Court's view, Maryland law applies to Defendant's contractual claims.[4]

## C.  Existence of Enforceable Agreement

At the heart of this case is whether the parties reached an enforceable agreement. Defendant argues that the Alleged Agreement was an enforceable, albeit oral, agreement to form a partnership[5] with Plaintiff; Plaintiff contends that no enforceable agreement resulted from this arrangement. Plaintiff argues further that even if the parties reached an enforceable agreement, it would be void due to illegality.[6]

---

[4] Notably, the parties agree that the choice of law does not impact the outcome of these claims; Maryland and Georgia law are the same. Defendant, for example, cites both Maryland and Georgia law in the materials opposing summary judgment.

[5] Defendant contends in the alternative that even if the Alleged Agreement did not give rise to a partnership between the parties, it still created binding contractual obligations that Plaintiff later breached.

[6] Plaintiff's illegality argument concerns licensing requirements in Maryland. Specifically, on October 22, 2015, Plaintiff obtained a Gaming Manufacturer License from the Maryland Lottery and Gaming Control Commission. [Doc. 49, p. 19]. Defendant does not hold any such license. Id. at 18. According to Plaintiff, Maryland law prevents the operation of gaming machines without a valid license. Plaintiff thus asserts that if a partnership resulted from the Alleged Agreement, such an arrangement would have been illegal because Defendant did not have the necessary credentials to participate in the partnership. [Doc. 46-1, pp. 16–23]. For its part, Defendant contends that the defense of illegality must be evaluated at the time of contracting, and in 2012, Maryland's licensing requirement did not yet exist. [Doc. 48, p. 20]. In any event, Plaintiff's illegality argument hinges on the existence of a partnership between the parties. See [Doc. 46-1, p. 19].

"The construction of an undisputed oral contract is for the court to decide as a matter of law." Ramlall v. MobilePro Corp., 30 A.3d 1003, 1014 (Md. Ct. Spec. App. 2011) (citation omitted). However, "the existence and terms of an oral contract, when disputed, are for the trier of facts to determine." Globe Home Imp. Co. v. McCarty, 105 A.2d 216, 218 (Md. 1954); see also Bontempo v. Lare, 90 A.3d 559, 591 (Md. Ct. Spec. App. 2014).[7] As such, summary judgment is not appropriate where a material dispute of fact exists about the existence or terms of an oral agreement. See, e.g., Home Paramount Pest Control Cos. v. FMC Corp./Agr. Prods. Grp., 107 F. Supp. 2d 684, 690 (D. Md. 2000) (denying summary judgment on a breach of contract claim where the parties disputed the terms of an oral contract).

Multiple disputes of material fact concerning the Alleged Agreement prevent the Court from granting summary judgment in this case. See D. H. Pace Co. v. Aaron Overhead Door Atlanta LLC, 522 F. Supp. 3d 1315, 1327 (N.D. Ga. 2020) ("If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." (quoting Herzog v. Castle Rock Ent., 193 F.3d

---

[7] Georgia law recognizes this same principle. See, e.g., Marshall v. King & Morgenstern, 613 S.E.2d 7, 10 (Ga. Ct. App. 2005) ("Where there is a conflict in the evidence as to the existence of an oral contract or as to its terms, the matter must be submitted to a jury for resolution." (quoting Ades v. Werther, 567 S.E.2d 340, 343 (Ga. Ct. App. 2002))).

1241, 1246 (11th Cir. 1999))).  The parties disagree, at a minimum, about the facts that concern whether they reached an enforceable oral agreement in 2012, the duration of any enforceable agreement and the parties' obligations upon the termination of any such agreement.  Because these threshold factual issues are disputed, the Court cannot reach other questions, such as whether the Alleged Agreement gave rise to a partnership or some other kind of contractual arrangement or, if the agreement did result in a partnership, whether that partnership is nonetheless void due to illegality.

These disputes are material because they implicate the very agreement on which Defendant's breach of contract counterclaim and the parties' respective declaratory judgment claims are premised.  See id. ("A fact is 'material' only if it can affect the outcome of the lawsuit under the governing legal principles." (quoting Anderson, 477 U.S. at 248)).  Moreover, these disputes are genuine.  Plaintiff has presented evidence that suggests the absence of essential terms in the Alleged Agreement, which could negate the mutual assent required for an enforceable contract.  See, e.g., Kiley v. First Nat'l Bank of Md., 649 A.2d 1145, 1152 (Md. Ct. Spec. App. 1994) ("It is . . . well established that an enforceable contract must express with definiteness and certainty the nature and extent of the parties' obligations.  If the contract omits a term or is too vague with respect to

essential terms, the contract may be invalid." (citations omitted)).  On the other hand, Defendant's evidence shows a history of performance between the parties that implies the existence of an enforceable agreement.  See, e.g., Braude v. Robb, 279 A.3d 1153, 1164 (Md. Ct. Spec. App. 2022) ("[W]hen parties disagree as to the existence or terms of an oral agreement, their conduct and intentions may be employed to determine any ambiguous and unknown provisions of the contract." (quoting Son v. Margolius, Mallios, Davis, Rider & Tomar, 689 A.2d 645, 656 (Md. Ct. Spec. App. 1997))).  This is clearly not a case where the evidence "'is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (quoting Anderson, 477 U.S. at 251).  As such, Plaintiff has not met its burden of showing that summary judgment is warranted in this case.[8]

## CONCLUSION

Plaintiff's Motion for Summary Judgment [Doc. 46] is **DENIED**.  The Motion for Leave to File Surreply [Doc. 50] is **GRANTED** *nunc pro tunc*.[9]

---

[8] Three of Defendant's counterclaims are premised on the existence of an enforceable agreement:  declaratory judgment, breach of contract and breach of fiduciary duties.  Defendant's remaining counterclaim, unjust enrichment, was pled in the alternative should the Court find that no enforceable contract existed.  Because all of these counterclaims hinge on the question of whether an enforceable agreement exists, summary judgment is inappropriate on any claim or counterclaim in this matter.

[9] The Court considered the surreply in its review of the record.

The parties are **HEREBY ORDERED** to file the consolidated pretrial order required by Local Rule 16.4 no later than twenty-one days from the entry of this Order.  The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment.  In the event a consolidated pretrial order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

**SO ORDERED** this 27th day of September, 2022.

J. P. BOULEE
United States District Judge